2014 PA Super 194

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES NASE, | |
| Appellant | No. 2946 EDA 2013 |

Appeal from the Order September 20, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001201-2005

BEFORE: FORD ELLIOTT, P.J.E., BOWES, and SHOGAN, JJ.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 09, 2014**

Charles Nase appeals from the denial of his petition to avoid additional sex offender registration requirements, specifically, registering for an additional fifteen years. After careful review, we reverse.

Appellant originally entered a guilty plea to statutory sexual assault, 18 Pa.C.S. § 3122.1, and unlawful contact with a minor, 18 Pa.C.S. § 6318, on March 7, 2006. The facts underlying the plea were that Appellant engaged in sexual intercourse with a female aged fourteen when he was twenty years of age. The Commonwealth agreed to *nolle prosse* charges of involuntary deviate sexual intercourse with a person less than sixteen years of age, aggravated indecent assault with a person less than sixteen years of age, indecent assault of a person less than sixteen years of age, and corruption of minors.

The court sentenced Appellant on May 24, 2006, to two months to twelve months incarceration for the statutory sexual assault charge and did not impose any further sentence at the remaining count. Appellant completed serving his sentence no later than May of 2007. However, the charge of unlawful contact with a minor required a period of sexual offender registration of ten years under Megan's Law. That registration offense was specifically included in the plea so that Appellant would be required to register as a sex offender for a period of ten years.

On December 20, 2012, a new version of Megan's Law became effective. This law brought Pennsylvania into compliance with the federal Sexual Offender Registration and Notification Act, SORNA.[1] Pennsylvania's SORNA law required those convicted of unlawful contact with a minor to register for twenty-five years.[2] Appellant filed the underlying petition on

_____

[1] Pennsylvania passed the statute in question in response to the federal government's passage of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16901 *et seq*. Title I of the Act is known as the Sex Offender Registration & Notification Act. Pursuant to the Adam Walsh law, failure of a state to modify its own sex offender registration and notification statutes to meet the standards of the federal provision would result in a loss of certain federal funds for state and local law enforcement. *See* 42 U.S.C. § 16925.

[2] The General Assembly has subsequently retroactively altered the law governing sexual offender registration. *See* 2014 P.L. ___, No. 19, § 3, 7(1) (enacted Mar. 14, 2014, effective Dec. 20, 2012). This change does not alter the fact that Appellant is now subject to additional registration requirements. The newest legislation, however, did retroactively remove registration requirements for individuals convicted of certain offenses
*(Footnote Continued Next Page)*

June 19, 2013. Therein, he contended that fundamental fairness, contract law, and the due process and contract clauses of the United States and the Pennsylvania Constitution precluded increasing his registration period from ten to twenty-five years. The court conducted a hearing that consisted of argument by both parties before denying Appellant's petition. The court issued an opinion in support of its order. This timely appeal ensued, and the court directed Appellant to comply with Pa.R.A.P. 1925(b). Appellant complied with the court's order and the court issued a brief supplemental opinion pursuant to Pa.R.A.P. 1925(a). Appellant now presents three issues for our review.

> A. Do the mandatory registration requirements for Megan's Law interfere with or violate any agreement made by and between the Commonwealth and the Defendant at the time that he entered into his guilty plea?
>
> B. Was the Defendant, at the time of his guilty plea and sentencing, specifically advised as to what his obligations were to be, not that those self same restrictions could be modified at some time in the future retroactively?
>
> C. Was the Commonwealth's reliance upon **Commonwealth v. Benner** [, 853 A.2d 1068 (Pa.Super. 2004)] misplaced?

Appellant's brief at 17.

Although Appellant purports to only raise three issues, his first claim contains eight interrelated sub-arguments. Appellant's initial three sub-

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

between a defined time period, which the December 20, 2012 legislation had initially imposed. **See** 42 Pa.C.S. § 9799.13(3.1).

- 3 -

arguments are that fundamental fairness and due process mandate that his plea agreement be enforced. His next two positions are constitutional challenges under the federal and Pennsylvania contract clauses. Relatedly, his final three sub-arguments allege that Pennsylvania's SORNA statute substantially impairs his plea bargain under the contract clauses.

The Fourteenth Amendment and Article I, § 9 of the Pennsylvania Constitution guarantee due process protections.[3] Our Supreme Court has ruled that these provisions are essentially coextensive. ***Commonwealth v. Moto***, 23 A.3d 989, 1001 (2011). Instantly, Appellant's brief is devoid of any cogent discussion of substantive or procedural due process standards, nor does he contend that a fundamental right is at issue. ***See Commonwealth v. Brown***, 52 A.3d 1139, 1162 (Pa. 2012); ***Khan v. State Bd. of Auctioneer Examiners***, 842 A.2d 936, 946 (Pa. 2004) ("Preliminarily, for substantive due process rights to attach there must first be the deprivation of a property right or other interest that is constitutionally protected."); ***Commonwealth v. Burnsworth***, 669 A.2d 883, 889 (Pa. 1995).

_____

[3] We recently noted that the phrase "due process" is not contained in the Pennsylvania Constitution, but the term "law of the land," used in Article I, § 9, is synonymous with that term. ***Commonwealth v. Rose***, 81 A.3d 123, 126 n.2 (Pa.Super. 2013), *allowance of appeal granted on other ground*, ___ A.3d ___ (Pa. 2014) (filed July 8, 2014) (citing ***Craig v. Kline***, 65 Pa. 399, 413 (1870); ***Murray v. Hoboken Land & Imp. Co.***, 59 U.S. 272, 276, 18 How. 272, 15 L.Ed. 372 (1855); ***Commonwealth v. Harrell***, 65 A.3d 420, 448 n.10 (Pa.Super. 2013) (Donohue, J., dissenting)).

Appellant does not argue that strict scrutiny or the rational basis test applies to the SORNA statute, *see Khan*, *supra*, and he does not discuss the statute in relation to his fundamental fairness arguments. Rather, his focus is on the contractual nature of his plea agreement. In this respect, he maintains that his ten-year registration period was an implicit term of his plea. He points out that, at sentencing, he was provided notice of the ten-year registration. Appellant highlights that both the United States Supreme Court and this Court have construed plea bargains as contractual in nature. *See Santobello v. New York*, 404 U.S. 257 (1971); *Puckett v. United States*, 556 U.S. 129, 137 (2009); *Commonwealth v. Kroh*, 654 A.2d 1168, 1172 (Pa.Super. 1995). In Appellant's view, his plea agreement must be strictly enforced, and any ambiguity is to be counted against the Commonwealth.

As Appellant's due process position is underdeveloped and relies solely on a contractual analysis, we need not determine whether SORNA's retroactive increase of registration requirements can withstand either strict scrutiny or the rational basis test. Instead, we examine whether a contractual analysis precludes Appellant, under the precise facts here, from being subject to fifteen additional years of registering as a sex offender.

Appellant's argument is virtually identical to that leveled by the appellee in *Commonwealth v. Hainesworth*, 82 A.3d 444 (Pa.Super. 2013) (*en banc*). In addition to *Santobello*, *supra* and *Kroh*, *supra*,

Appellant relies on **Commonwealth v. Mebane**, 58 A.3d 1243 (Pa.Super. 2012), **Commonwealth v. Zuber**, 353 A.2d 441 (Pa. 1976), and an unpublished non-precedential Court of Common Pleas decision, **Commonwealth v. McMullen**, 3116 C 2008 (Westmoreland County, Ct. Com.Pl.) (filed December 18, 2008),[4] each of which was briefed and discussed by the appellee in **Hainesworth**.

In **Mebane**, the Commonwealth appealed after the trial court upheld a plea bargain initially agreed to by the parties, but was subsequently withdrawn by the Commonwealth on the date of the plea hearing. The Commonwealth argued principally that, because a plea agreement does not officially exist until it is entered of record and accepted by the court, no agreement existed. The **Mebane** Court rejected this position, reasoning,

> simply because Mebane does not have a right to specific enforcement of the agreement does not necessarily deprive the trial court of the discretion to enforce the plea agreement in circumstances where enforcement is in the interest of justice. Second, the existential question of whether an agreement exists prior to its presentment in open court may be relevant to, but not necessarily dispositive of, the determination of whether enforcement is justified as a matter of judicial discretion rather than as a matter of right.

*Id*. at 1248.

_____

[4]  Although Appellant asserts that he has attached a copy of the **McMullen** decision to his brief, the decision is neither attached to nor part of the record. As the decision was not published and we are without a copy of that decision, we do not discuss or rely on it.

In **_Zuber_**, the Pennsylvania Supreme Court afforded post-conviction relief to a defendant by modifying his sentence. The defendant in **_Zuber_** pled guilty to murder in exchange for the Commonwealth recommending a sentence of seven to fifteen years incarceration to be served concurrently to a parole violation sentence that consisted of a term of imprisonment of four and one-half years. However, state law at the time mandated that the sentences be consecutive. The **_Zuber_** Court concluded that the plea agreement was illusory and that the defendant's plea was not knowingly and voluntarily entered. It opined that, "where a plea bargain has been entered into and is violated by the Commonwealth, the defendant is entitled, at the least, to the [b]enefit of the bargain." **_Id_**. at 444. Based on the defendant's request on appeal, the Supreme Court modified his murder sentence to two and one-half to fifteen years, thereby affording him the benefit of his initial bargain.

Appellant also relies on this Court's recent decision in **_Hainesworth_**, **_supra_**. The defendant in **_Hainesworth_** entered a negotiated guilty plea on February 27, 2009, to three counts of statutory sexual assault and three counts of a misdemeanor of the second-degree indecent assault, and one count of criminal use of a communication facility. In exchange, the Commonwealth dismissed charges of aggravated indecent assault, which carried a lifetime registration requirement. When Hainesworth entered his plea, none of the crimes to which he pled guilty mandated registration under

Megan's Law. Currently, these crimes do not require registration for those convicted between January 23, 2005 and December 19, 2012. *See* 42 Pa.C.S. § 9799.13(3.1) (delineating crimes that are not sexually violent offenses when occurring in aforementioned period). However, prior to March 14, 2014, and at the time of Hainesworth's appeal, the legislature had passed legislation that would have required those convicted of the relevant statutory sexual assault and indecent assault charges to register for a period of twenty-five years.

Accordingly, Hainesworth, while still on probation, filed a motion to terminate his supervision. The trial court declined to terminate Hainesworth's probation, but determined that Hainesworth was not subject to registration. The Commonwealth appealed. On appeal, the Commonwealth argued that the registration requirements were a non-punitive collateral consequence of his plea. Hainesworth countered that it was immaterial that registration was a collateral consequence of his plea since non-registration was an express term of his plea agreement.

The **Hainesworth** Court initially determined that Hainesworth correctly framed the question as implicating contract law. We then found that the record established that the defendant had specifically entered a negotiated guilty plea to avoid Megan's Law registration entirely. We held that because Appellant specifically negotiated with the Commonwealth to

remove all sex offenses that required registration, requiring him to register would deprive him of the benefit of his bargain.

Subsequently, in **Commonwealth v. Partee**, 86 A.3d 245 (Pa.Super. 2014), we addressed **Hainesworth** in the context of a defendant who initially pled *nolo contendere* on September 17, 2007, to indecent assault of a person under the age of thirteen, corruption of minors, and endangering the welfare of children. Per the plea agreement, charges of rape and incest were withdrawn. The court sentenced Partee to a term of six months intermediate punishment to be followed by four years of probation. Partee violated his probation, and the court re-sentenced him on May 11, 2010, on the indecent assault count.

At the time Partee originally pled guilty, the indecent assault of a person less than thirteen required a ten-year registration period. On December 20, 2011, the General Assembly enacted a new version of Megan's Law to comply with the federal SORNA. As discussed previously, that law took effect December 20, 2012. Pennsylvania's SORNA mandated that those who were convicted of indecent assault of a person under the age of thirteen register as a sex offender for life.[5]

---

[5] The March 14, 2014 amendment to Pennsylvania's SORNA, which occurred after this Court decided **Commonwealth v. Partee** 86 A.3d 245 (Pa.Super. 2014), on February 20, 2014, retained the lifetime reporting requirement. **See** 2014 P.L. ___, No. 19, § 3, 7(1) (enacted Mar. 14, 2014, effective Dec. 20, 2012).

Partee filed a petition for *habeas corpus* and/or seeking enforcement of his plea agreement. The court below treated the petition as a PCRA petition. We rejected this position since Partee was not contesting his conviction, his sentence, the effectiveness of plea counsel, or that his right to appeal his judgment of sentence was obstructed by government officials.

The **Partee** Court then noted that the ten-year registration period was expressly discussed at Partee's plea hearing. We found that Partee's negotiated plea "was structured so that he would only be subject to a ten-year rather than a lifetime reporting requirement[.]" **Partee**, **supra** at 249. The **Partee** panel set forth that, "[u]nder our reasoning in **Hainesworth**, [Partee] arguably would be entitled to the benefit of that bargain." **Id**. Nonetheless, we rejected Partee's challenge because he had violated his initial plea agreement by violating the terms of his probation. Ultimately, we held that, "having failed to abide by the terms of the plea bargain, that agreement is no longer in effect, and hence, [Partee] is not entitled to specific performance." **Id**. at 250.

Based on **Hainesworth** and **Partee**, and because Appellant is not seeking to withdraw his plea, but to enforce it, it is necessary to determine whether the ten-year registration period was a material part of the plea agreement. The Commonwealth argues that although the ten-year registration period was "the subject of discussion at the plea proceeding," it "was not and could not have been one of the terms of the negotiated plea."

Commonwealth's brief at 7.   Quixotically, it highlights that it requested Appellant to plead guilty to unlawful contact with a minor precisely so that he would be subject to registration.   Nonetheless, it continues that the only express terms of the plea agreement were that Appellant plead to statutory sexual assault and unlawful contact with a minor in exchange for withdrawal of the remaining charges and a recommendation of a concurrent sentence. In essence, the Commonwealth's position is that the length of the registration was not a part of the agreement, only the fact of registration.

As in *Hainesworth*, the Commonwealth relies on our Supreme Court's decision in *Commonwealth v. Leidig*, 965 A.2d 399 (Pa. 2008), and this Court's decision in *Benner*.   In *Leidig*, our Supreme Court considered whether the "failure of a trial court to accurately advise a defendant of the duration of the Megan's Law registration period constitutes grounds for withdrawal of the plea." *Leidig*, *supra* at 403.   Therein, the defendant entered an open *nolo contendere* to aggravated indecent assault on September 18, 2002, based on the assault of his thirteen-year-old step-daughter in June of 2000.  At the time of the offense, Megan's Law required registration for a period of ten years; however, when the defendant entered his plea, the law mandated lifetime registration.

Importantly, during the plea proceeding, unlike herein, there was no mention of the registration requirements under Megan's Law.  At sentencing, the trial court advised the defendant that he would be subject to a ten-year

registration period. On that same date, after sentencing, both the prosecution and defense counsel alerted the court that under Megan's Law II, then in effect, lifetime registration was required for aggravated indecent assault. Nonetheless, the court and parties mistakenly agreed that Leidig would only be subject to a ten-year period of registration. Upon learning that he would be required to register for life, Leidig filed a motion to withdraw his plea, contending that it was not knowing, intelligent, and voluntary. The trial court denied the motion, but opined that Leidig should only be subject to the ten-year reporting requirement.

This Court concluded that Leidig was not entitled to withdraw his plea and that he had to register for life. The Pennsylvania Supreme Court affirmed. The High Court reasoned that because Megan's Law registration requirements are a civil collateral consequence of a plea, the sentencing court's error did not result in an involuntary and unknowing plea.

The *Leidig* Court was not faced with the question of whether the parties negotiated the registration requirement as part of the plea agreement. Pointedly, it is evident that registration was not part of the negotiations since no mention of registration was made during the plea proceeding and the parties did not become aware of the discrepancy in registration requirements until after sentencing. Furthermore, Leidig was attempting to withdraw his plea, not enforce it based on the negotiated terms of the plea. Thus, we find *Leidig* is not dispositive. Moreover,

*Hainesworth* demonstrates that the collateral consequence construct does not eliminate the requirement that courts enforce bargained-for exchanges where the parties negotiate over a collateral consequence of a plea.

In *Benner*, the defendant pled guilty to aggravated indecent assault on February 23, 1999. The court sentenced him on April 14, 1999, to two and one-half to five years incarceration. At the time of his plea and sentencing, Megan's Law I was in effect. That law required a ten-year period of registration. Subsequently, Benner was granted parole, but, as a condition of his release, prison officials notified him that he had to comply with Megan's Law II. That law mandated lifetime reporting for those convicted of aggravated indecent assault.

Benner filed a motion seeking to excuse further compliance with the lifetime registration requirement. The trial court denied the motion and Benner appealed. Benner argued that he negotiated to avoid registration under Megan's Law I, and that because he had not been given a Megan's Law colloquy, his plea was involuntary and unlawful. In the alternative, Benner posited that he should only be subject to registration for ten years.

Finding nothing in the record to support that position, we rejected Benner's claim that he relied on representations by the prosecution that he would not have to register. Additionally, we held that, because registration was a collateral consequence of his plea, the court's failure to colloquy him on Megan's Law did not invalidate his plea. The *Benner* Court then

proceeded to analyze whether he was subject to the ten-year registration provision of Megan's Law I or lifetime reporting. We noted that Benner's argument in this latter respect was cursory. Ultimately, the **Benner** panel concluded that, "the collateral effect of current legislation may be imposed on the defendant so long as he remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense[.]" **Id**. at 1068.

Here, unlike **Benner**, the defendant was no longer in the custody of correctional authorities, having completed his sentence. More importantly, the record in this case does establish that a ten-year period of registration was part of Appellant's plea agreement. At the plea hearing, counsel for Appellant stated, "he's aware that Count VI of the Information –because Count I does not have it, Count VI was added, and that carries a 10-year reporting requirement of Megan's Law." N.T., 3/7/06, at 3-4. Counsel added, "we actually discussed at length that statutory Count I does not carry a Megan's Law charge with it. That's why Count VI was added, and he is in full agreement with that." **Id**. at 4.

During sentencing the Commonwealth related,

He was determined not to be a sexually violent predator. No objection to the recommendation. However, it's an offense requiring Megan's Law notification, Your Honor, and I believe the Defendant is reviewing the documents and paperwork with his attorney right now.

Your Honor, just for the record, I have the notification at sentencing for the Megan's Law requirement. It's been initialed

and signed by the Defendant and also signed by his attorney. And he does acknowledge that he must register his current address with the Pennsylvania State Police and provide other information as required by law upon his release from incarceration or upon his parole from a state or county facility.

. . . .

The period of registration shall be for ten years.

N.T., 5/24/06, at 4-5.

Appellant's attorney reiterated, "Your Honor, for the record, Mr. Nase and I several months ago actually went over all of the specific registration requirements of Megan's Law." *Id*. at 5. To suggest that Appellant did not contemplate a ten-year period of registration and expressly agree to that term by pleading guilty to unlawful contact with a minor is contrary to the record. Certainly, Appellant did not negotiate for a period of registration of twenty-five years. To the extent that the Commonwealth asserts that registration was not part of the plea agreement, such a position is belied by the fact that Appellant expressly agreed to plead guilty to unlawful contact with a minor so as to be subject to the then-extant registration period. Thus, registration consequences were unequivocally part of the plea negotiations and arrangement. Since the law at that time mandated registration for a period of ten years, that period of registration was contemplated as part of his plea agreement. *See Landay v. Rite Aid*, 40 A.3d 1280, 1288 (Pa.Super. 2012), *appeal granted in part on other grounds*, 73 A.3d 577 (Pa. 2013) ("the laws that are in force at the time the parties

- 15 -

enter into a contract are merged with the other obligations that are specifically set forth in the agreement.")

In light of this Court's recent pronouncements on the issue of retroactive sexual offender registration in the context of plea agreements and the present record, we find that the ten-year registration requirement was part of Appellant's plea bargain. Therefore, he is entitled to the benefit of his bargain, and is not subject to additional registration beyond that envisioned by his plea agreement. *See Hainesworth*, *supra*; *cf*. *Partee*, *supra*.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014