J. S38006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, :    IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
           Appellant     :
:
            v.          :        No. 3067 EDA 2015
:
JUAN E. RIVERA III         :


Appeal from the Order, September 16, 2015,
in the Court of Common Pleas of Monroe County
Criminal Division at No. CP-45-CR-0001510-2005


BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JULY 20, 2016**

The Commonwealth appeals the order of September 16, 2015, granting Juan E. Rivera, III's ("Rivera") motion to enforce the plea agreement.  After careful review, we affirm.

The trial court has set forth the history of this case as follows:

> On January 23, 2006, a Criminal Information was filed against [Rivera] charging him with three counts of Indecent Assault on a Person less than 13 Years of Age, Corruption of Minors, and Endangering the Welfare of Children.[Footnote 1] These charges arose from an incident where [Rivera] allegedly kissed and fondled a minor.  On April 20, 2006, [Rivera] entered an open guilty plea to Indecent Assault, graded as a misdemeanor of the first degree.  This guilty plea was entered pursuant to a negotiated plea agreement, wherein the Commonwealth **nolle prossed** the remaining charges in exchange for [Rivera] entering a guilty plea to one count of Indecent Assault.  On August 29, 2006, [Rivera] was sentenced to a term

of incarceration of no less than 12 months nor more than 24 months. As a result of his conviction for Indecent Assault, [Rivera] was required to register as a sex offender under Megan's Law[1] for a period of 10 years. Megan's Law was amended on December 20, 2011 (SORNA -- the Sex Offender Registration and Notification Act),[2] resulting in [Rivera's] requirement to now register for his lifetime, as he was within his original ten year registration period when SORNA went into effect.[3] [Rivera] filed this Motion to Enforce a Plea Agreement on May 4, 2015 and a hearing was held on June 30, 2015.

> [Footnote 1] 18 Pa.C.S.A. § 3126(a)(7) -- Indecent Assault -- Person Less than 13 Years of Age; 18 Pa.C.S.A. § 6301(a)(1) -- Corruption of Minors; 18 Pa.C.S.A. § 4304(a) -- Endangering the Welfare of Children.

Trial court opinion and order, 9/16/15 at 1-2.

On September 16, 2015, the trial court granted Rivera's motion to enforce the plea agreement, finding that the 10-year Megan's Law registration was an essential term of the negotiated plea agreement Rivera

---

[1] 42 Pa.C.S.A. §§ 9791-9799.9.

[2] *See* 42 Pa.C.S.A. §§ 9799.10-9799.41. SORNA, the successor to Megan's Law II, was enacted on December 20, 2011, and became effective on December 20, 2012.

[3] 42 Pa.C.S.A. § 9799.13(3), (3.1).

made with the Commonwealth.[4] The trial court determined that, examining the totality of the circumstances, the plea agreement was structured in such a way that Rivera would only be subject to the 10-year Megan's Law registration requirement. Following this court's decisions in **Commonwealth v. Hainesworth**, 82 A.3d 444 (Pa.Super. 2013) (**en banc**), **appeal denied**, 95 A.3d 276 (Pa. 2014), and **Commonwealth v. Nase**, 104 A.3d 528 (Pa.Super. 2014), holding that where registration consequences are unequivocally part of the plea negotiations and subsequent agreements, the defendant is entitled to the benefit of his bargain, the trial court concluded that Rivera was not subject to the new registration requirements under SORNA. Rather, the trial court held that Rivera was subject to the 10-year Megan's Law registration in effect at the time of his plea.

The Commonwealth filed a timely notice of appeal on October 7, 2015. On October 8, 2015, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days; the Commonwealth complied on October 28, 2015, alleging, **inter alia**, that the trial court erred in finding that the 10-year registration was a specifically bargained-for term of the

---

[4] We note that Rivera's claim does not fall within the scope of the PCRA (Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546) and is not reviewed under the standard applicable to PCRA petitions, nor is it subject to the PCRA's time constraints. **Commonwealth v. Partee**, 86 A.3d 245, 247 (Pa.Super. 2014), **appeal denied**, 97 A.3d 744 (Pa. 2014).

plea agreement. (Docket #8.) The trial court filed a Rule 1925(a) opinion on November 18, 2015, reiterating that its decision is dictated by this court's decisions in **Hainesworth** and **Nase**, which "made it clear that the issue now before this Court -- [Rivera's] Megan's Law registration requirement -- is to be analyzed under contract principles in terms of enforcing [Rivera's] plea agreement with the Commonwealth." (Trial court opinion, 11/18/15 at 2.)

The Commonwealth frames the issues to be decided on appeal as follows:

1. Did the Trial Court err in finding the 10 year registration was a specifically bargained for term of the plea agreement?

2. Did the Trial Court err in finding that the mere act of advising a defendant of collateral consequences, created a binding contractual obligation on the part of the Commonwealth, when such notification was required by law?

3. Did the Trial Court err in finding that specific length of the registration, which was a collateral consequence, was within the control of the District Attorney, when at the time of the plea, the only possible registration periods allowed by law were either 10 year[s] or life?

4. Did the Trial Court err in finding that the state cannot, in the valid exercise of its police powers, modify the terms of an existing contract?

5. Did the Trial Court err in modifying the period of registration contrary to the plain language of 42 Pa.C.S.A. § 9799.20?

- 4 -

Commonwealth's brief at 4.

> With respect to plea bargains, "The reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: [n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. Plea bargaining is not some adjunct to the criminal justice system; it is the criminal justice system. Accordingly, it is critical that plea agreements are enforced, to avoid any possible perversion of the plea bargaining system." [**Hainesworth**, 82 A.3d] at 449 (internal citations and quotation marks omitted). "The disposition of criminal charges by agreement between the prosecutor and the accused, . . . is an essential component of the administration of justice. Properly administered, it is to be encouraged. In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule . . . . A 'mutuality of advantage' to defendants and prosecutors flows from the ratification of the bargain." **Commonwealth v. Parsons**, 969 A.2d 1259, 1267-68 (Pa.Super. 2009) (**en banc**), **appeal denied**, 603 Pa. 685, 982 A.2d 1228 (2009).

**Commonwealth v. Farabaugh**, ___ A.3d ___, 2016 WL 1072110 at *4

(Pa.Super. March 11, 2016).

> Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. **Commonwealth v. Anderson**, 995 A.2d 1184, 1191 (Pa.Super. 2010), **appeal denied**, 608 Pa. 634, 9 A.3d 626 (2010). "Specific enforcement of valid plea bargains is a matter of fundamental fairness." **Hainesworth**, **supra**. "The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to--and seek enforcement of-- terms that fall outside these areas." **Id.**

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity.

*Commonwealth v. Kroh*, 440 Pa.Super. 1, 654 A.2d 1168, 1172 (Pa.Super. 1995) (internal citations omitted). Regarding the Commonwealth's duty to honor plea agreements, well-settled Pennsylvania law states:

Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

*Id.* (internal citations omitted). Whether a particular plea agreement has been breached depends on what the "parties to the agreement reasonably understood to be the terms of the agreement." *Commonwealth v. Fruehan*, 384 Pa.Super. 156, 557 A.2d 1093, 1094 (Pa.Super. 1989).

*Farabaugh*, 2016 WL 1072110 at *5.

Sex offender registration:

> [O]bviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability to earn a livelihood, his housing arrangements and options, and his reputation. In fact, the requirements of registration are so rigorously enforced, even the occurrence of a natural disaster or other event requiring evacuation of residences shall not relieve the sexual offender of the duty to register . . . . [W]hen a defendant agrees to a guilty plea, he gives up his constitutional rights to a jury trial, to confrontation, to present witness, to remain silent and to proof beyond a reasonable doubt. In negotiating a plea that will not require him to register as a sex offender, the defendant trades a non-trivial panoply of rights in exchange for his not being subject to a non-trivial restriction. Fundamental fairness dictates that this bargain be enforced.

*Hainesworth*, *supra*. To summarize: (a) where a plea bargain is structured so the defendant will not have to register or report as a sex offender or he will have to register and report for a specific time; and (b) the defendant is not seeking to withdraw his plea but to enforce it, then the "collateral consequence" concept attributed generally to sex offender registration requirements does not trump enforcement of the plea bargain. *Commonwealth v. Nase*, 104 A.3d 528, 532-33 (Pa.Super. 2014) (holding appellant was entitled to benefit of his bargain for lower registration requirement, in light of recent plea-bargain law, which limits retroactive application of new or increased sex offender registration/reporting requirements, based on specific record of case).

J. S38006/16

*Farabaugh*, 2016 WL 1072110 at *5-6.

We determine that this court's decision in *Nase* controls the outcome of this case. In *Nase*, the appellant pled guilty to statutory sexual assault and unlawful contact with a minor; the Commonwealth agreed to *nolle prosse* additional charges including aggravated indecent assault and involuntary deviate sexual intercourse ("IDSI"). *Nase*, 104 A.3d at 528. At the time of his plea, unlawful contact required a 10-year period of registration under Megan's Law. *Id.* Subsequently, SORNA was enacted, which required those convicted of unlawful contact to register for 25 years. *Id.* at 529. On appeal from the denial of his petition to avoid additional sex offender registration requirements, this court reversed, finding that the record established that a 10-year period of registration was part of the appellant's plea agreement. At the plea hearing, defense counsel indicated that the appellant understood that unlawful contact carried a 10-year reporting requirement, and was "in full agreement with that." *Id.* at 534. This court in *Nase* also recited the sentencing proceedings, during which the Commonwealth related,

> He was determined not to be a sexually violent predator. No objection to the recommendation. However, it's an offense requiring Megan's Law notification, Your Honor, and I believe the Defendant is reviewing the documents and paperwork with his attorney right now.
>
> Your Honor, just for the record, I have the notification at sentencing for the Megan's Law requirement. It's been initialed and signed by the

- 8 -

Defendant and also signed by his attorney. And he does acknowledge that he must register his current address with the Pennsylvania State Police and provide other information as required by law upon his release from incarceration or upon his parole from a state or county facility.

. . . .

The period of registration shall be for ten years.

*Id.* The **Nase** court rejected the Commonwealth's argument that although the 10-year registration period was the subject of discussion at the plea proceeding and during sentencing, it was not one of the terms of the negotiated plea:

To suggest that Appellant did not contemplate a ten-year period of registration and expressly agree to that term by pleading guilty to unlawful contact with a minor is contrary to the record. Certainly, Appellant did not negotiate for a period of registration of twenty-five years. To the extent that the Commonwealth asserts that registration was not part of the plea agreement, such a position is belied by the fact that Appellant expressly agreed to plead guilty to unlawful contact with a minor so as to be subject to the then-extant registration period. Thus, registration consequences were unequivocally part of the plea negotiations and arrangement. Since the law at that time mandated registration for a period of ten years, that period of registration was contemplated as part of his plea agreement. *See* ***Landay v. Rite Aid***, 40 A.3d 1280, 1288 (Pa.Super. 2012), ***appeal granted in part on other grounds***, 621 Pa. 108, 73 A.3d 577 (2013) ("the laws that are in force at the time the parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement.")

*Id.  See also Hainesworth*, 82 A.3d at 448 (where "the plea agreement appears to have been precisely structured so that Hainesworth would not be subjected to a registration requirement," he was entitled to the benefit of his bargain); *Farabaugh*, 2016 WL 1072110 at *6 (where the record made clear that Farabaugh pled guilty to an offense that had no sex offender registration/reporting requirement and that factor was part of the negotiated plea agreement, this court refused to allow Farabaugh's plea bargain to be reformed with the addition of new conditions (*i.e.*, 25 years of sex offender registration and reporting under SORNA), which did not exist when Farabaugh entered the plea agreement); *Partee*, 86 A.3d at 249 ("While it was not an explicit term of the negotiated plea, it is apparent that [Partee]'s negotiated plea agreement was structured so that he would only be subject to a ten-year rather than a lifetime reporting requirement  . . .").

In the instant case, Rivera agreed to plead guilty to Count 1, indecent assault, graded as a first-degree misdemeanor.  (Notes of testimony, plea, 4/20/06 at 6.)  The Commonwealth noted that it was a Megan's Law offense. (*Id.*)  In exchange for his plea, the Commonwealth agreed to drop all other charges.  At sentencing, the Commonwealth indicated that there was a 10-year registration/reporting requirement under Megan's Law:

> Your Honor, before the Court does impose sentence, also I do have the notification at sentencing in regards to the Megan's Law requirement in this case. It requires a 10-year registration.  After he addresses the Court, I would like an opportunity just to read that into the record.

Notes of testimony, sentencing, 8/29/06 at 3. **See also id.** at 6 ("For the offense that [Rivera] pled guilty [to], it requires a 10-year registration."). Rivera also completed a written sentencing notification, providing that, "The period of registration shall be for ten (10) years from release from incarceration." ("Notification at sentencing," 8/29/06 at 2, ¶8.)

The Commonwealth argues that the period of registration was not a specific term of the agreement and, at sentencing, Rivera was merely informed that he was required to register under Megan's Law for a period of 10 years, which notification was required by law. (Commonwealth's brief at 10.) The Commonwealth complains that the simple act of notifying a defendant of his duty to register does not turn it into a bargained-for term of a contract. (**Id.** at 12.)

The Commonwealth made a similar argument in **Nase**, and this court rejected it, agreeing with the appellant in that case that a 10-year registration period was an implicit term of his plea. As discussed above, the parties in **Nase** never explicitly stated that a 10-year registration period was a condition of the appellant's plea. Nevertheless, this court held that the 10-year registration requirement was part of the appellant's plea bargain which must be strictly enforced, and any ambiguity was to be construed against the Commonwealth. The record in this case supports the trial court's conclusion that the 10-year Megan's Law registration period was an essential

term of the negotiated plea agreement. As such, it was not error for the trial court to order specific enforcement of that bargain. **Hainesworth**.[5]

The Commonwealth relies on **Commonwealth v. Benner**, 853 A.2d 1068 (Pa.Super. 2004), which is inapposite. In **Benner**, the defendant entered a negotiated guilty plea to aggravated indecent assault, purportedly on the representation of the district attorney that he would not be subject to the Megan's Law registration provisions. **Benner**, 853 A.2d at 1069. The Commonwealth withdrew additional charges including rape and IDSI. **Id.** At the time of his guilty plea and sentencing, Megan's Law I was in effect. **Id.** Subsequently, after the repeal of Megan's Law I and the effective date of Megan's Law II, which required lifetime registration, the defendant was granted parole. **Id.** As a condition of his release, prison officials insisted that he register his address with the state police in accordance with 42 Pa.C.S.A. § 9795.1(b), the registration provision of Megan's Law II

---

[5] We note that the Pennsylvania Supreme Court, on April 8, 2015, granted allowances of appeal to consider the following question: "Whether the Superior Court's application of its decision [in] **Commonwealth v. Hainesworth** to the instant cases impermissibly expanded the contract clause to bind the Commonwealth to collateral consequences over which the Commonwealth has no control?" **Commonwealth v. Martinez**, 112 A.3d 1207 (Pa. 2015); **see also Commonwealth v. Shower**, 112 A.3d 1210 (Pa. 2015). Unless and until **Hainesworth** is overruled by the Supreme Court of Pennsylvania, it remains the law of this Commonwealth. **See Commonwealth v. Martin**, 727 A.2d 1136, 1141 (Pa.Super. 1999), **appeal denied**, 745 A.2d 1220 (Pa. 1999) ("It is well-settled . . . that until the Supreme Court overrules a decision of this Court, our decision is the law of this Commonwealth."), citing **Commonwealth v. Leib**, 588 A.2d 922, 932 (Pa.Super. 1991).

applicable to his crime. *Id.* The defendant complied but filed a Motion for Hearing Regarding Megan's Law Applicability, asserting that he had crafted his guilty plea to avoid Megan's Law registration and had not been given a Megan's Law colloquy. *Id.* The trial court denied the motion and ordered him to comply with the registration provisions of Megan's Law II. *Id.* at 1070.

On appeal, a panel of this court affirmed, applying *Commonwealth v. Leidig*, 850 A.2d 743 (Pa.Super. 2004), *affirmed*, 956 A.2d 399 (Pa. 2008) (registration provisions of Megan's Law do not constitute criminal punishment and are properly characterized as a "collateral consequence" of the defendant's plea). We explained that

> [b]ecause the registration requirement under either Megan's Law is a collateral consequence of the defendant's plea, the failure of the court to apprise [Benner] of it does not invalidate his plea. Moreover, Benner, like the defendant in *Leidig*, concedes his awareness of the registration requirement under Megan's I, acknowledging that it was a matter of concern when he entered his plea. Although he contends that he relied on the representation of the District Attorney that he would not be required to register, the record provides no substantiation that the District Attorney ever made such a representation. Moreover, Benner concedes that the law indisputably applicable on the date he tendered his plea required registration for ten years following release from prison. Accordingly, we conclude that the failure of the trial court to inform Benner of the registration requirement prior to accepting his plea invalidates neither the plea nor application of the registration requirement under Megan's I.

*Benner*, 853 A.2d at 1071. The *Benner* court also concluded that the trial court did not err in applying the lifetime registration provisions of Megan's Law II, where the increase in the length of the registration period does not constitute punishment: "We read these cases to suggest that the collateral effect of current legislation may be imposed on the defendant so long as he remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense." *Id.* at 1072 (citations omitted).

In *Benner*, there was no indication whatsoever that the 10-year registration provision of Megan's Law I was a term of the plea bargain. In fact, the defendant in *Benner* was never informed, on the record, of the applicable registration provisions. *Id.* at 1069. Therefore, this court in *Benner* never analyzed whether, under contract law principles, a registration requirement was included as a term of a negotiated plea agreement. The *Benner* court found no support for the proposition that the defendant had been promised that he would not be required to register. *Benner* and *Leidig*, upon which *Benner* relied, are readily distinguishable. *See Hainesworth*, 82 A.3d at 450 ("unlike the instant case, the record did not support Benner's contention that he had bargained for non-registration as a term of his plea"); *Nase*, 104 A.3d at 533 ("The *Leidig* Court was not faced with the question of whether the parties negotiated the registration requirement as part of the plea agreement."). Here, the Commonwealth insists that the specific length of registration is a collateral consequence of a

defendant's plea that is outside the Commonwealth's control. However, as stated by this court in **Nase**, "the collateral consequence construct does not eliminate the requirement that courts enforce bargained-for exchanges where the parties negotiate over a collateral consequence of a plea." **Id.**

For these reasons, we determine the trial court did not err in granting Rivera's motion to enforce the plea agreement requiring him to register under Megan's Law for a period of 10 years. As a matter of fundamental fairness, Rivera is entitled to specific enforcement of his valid plea bargain and is not required to comply with the lifetime reporting requirements of SORNA. **See Nase**; **Hainesworth**.

Order affirmed.

Jenkins, J. joins the Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016