J-S28033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MOHAMMAD SOHAIL SALEEM | : | |
| | : | |
| Appellant | : | No. 198 MDA 2022 |

Appeal from the Order Dated September 21, 2021
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001112-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MOHAMMAD SOHAIL SALEEM | : | |
| | : | |
| Appellant | : | No. 345 MDA 2022 |

Appeal from the Order Entered September 21, 2021
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000565-2014

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: OCTOBER 4, 2022**

Appellant, Mohammad Sohail Saleem, appeals *pro se* from the order entered in the Lebanon County Court of Common Pleas, denying his motion to enforce a plea agreement. We affirm.

The relevant facts and procedural history of this case are as follows. On April 21, 2015, Appellant entered a guilty plea at docket No. CP-38-CR-

0000565-2014 to two counts of indecent assault. That same day, Appellant also pled guilty to one count each of indecent assault and harassment at docket No. CP-38-CR-0001112-2014. Relevant to this appeal, the terms of Appellant's plea bargain were that the Commonwealth would dismiss the remaining charges, the plea would be open as to sentencing, and the Commonwealth would have no objection to Appellant's immediate deportation. On June 3, 2015, the court sentenced Appellant to an aggregate 21 months to 10 years' imprisonment. There was a discussion at sentencing that Immigration and Customs Enforcement ("ICE") had planned to deport Appellant to Pakistan within a week of sentencing based on 2009 convictions not at issue here. Nevertheless, Appellant was not deported following sentencing.

Appellant did not file a direct appeal from his judgment of sentence. Instead, on August 31, 2015, Appellant filed a timely, counseled petition under the Post Conviction Relief Act ("PCRA"), alleging plea counsel was ineffective in misleading him to believe that, in exchange for pleading guilty, he would be deported to Pakistan without serving any sentence of imprisonment in the United States in connection with his guilty plea. After a hearing, the PCRA court denied relief. This Court affirmed the denial of PCRA relief. *See Commonwealth v. Saleem*, No. 645 MDA 2016 (Pa.Super. filed Mar. 28, 2017) (unpublished memorandum) ("*Saleem I*") (affirming on basis of PCRA court's opinion stating there was no promise of immediate deportation in exchange for Appellant's plea, and counsel did not render ineffective

assistance in this regard).

On August 17, 2020, Appellant filed a *pro se* petition for writ of *habeas corpus*.[1] In it, Appellant claimed he entered a negotiated guilty plea in which immediate deportation was a bargained-for term of his plea agreement. Appellant sought specific enforcement of the agreement. The court treated the claim under the auspices of the PCRA and denied relief.

On appeal, this Court agreed with Appellant that the claim fell outside the parameters of the PCRA. Nevertheless, this Court held:

> [W]e find no merit to Appellant's claim that his plea agreement contained a bargained-for term in which he would be immediately deported to Pakistan without serving a prison sentence in the United States in connection with the instant crimes. While the Commonwealth indicated it would not object to Appellant's immediate deportation, the record reflects that Appellant was informed deportation was a "potential" consequence of his guilty plea. Moreover, during Appellant's sentencing hearing, the Commonwealth acknowledged that deportation was within the purview of the federal government.
>
> Further, the fact [that] ICE had commenced deportation proceedings against Appellant in connection with his prior [2009] convictions does not alter our conclusion. As the PCRA court indicated in denying Appellant's first PCRA petition, while the ADA and Appellant believed Appellant would be deported due to his prior convictions, **deportation was not a condition of Appellant's instant guilty plea**. In fact, as the PCRA court noted, deportation decisions are beyond the control of the District Attorney's Office, and Appellant's trial counsel admitted he informed Appellant of this fact prior to the entry of the guilty plea.

---

[1] Prior to this filing, Appellant filed other claims for relief which are not relevant to the current appeal.

***Commonwealth v. Saleem***, Nos. 1553 MDA 2020 and 1554 MDA 2020, unpublished memorandum at 9-10 (Pa.Super. filed Aug. 6, 2021) ("***Saleem II***") (internal citations omitted) (emphasis added). Thus, this Court affirmed the denial of *habeas corpus* relief.

On September 13, 2021, Appellant filed the current motion to enforce the plea agreement, arguing that the Commonwealth's agreement not to object to Appellant's immediate deportation was a bargained-for term of his plea agreement. Appellant alleged the Commonwealth violated the terms of this agreement by filing a writ of *habeas corpus ad prosequendum* (a writ to appear for prosecution) on June 16, 2015, to transport Appellant for purposes of a hearing, which ultimately halted all deportation proceedings. Appellant insisted the Commonwealth filed the writ in "bad faith" because no hearing ever occurred in connection with the writ. Essentially, Appellant contended that by filing the writ, the Commonwealth "objected" to Appellant's immediate deportation, in derogation of the plea agreement.

On September 20, 2021, the court denied relief. Appellant timely filed notices of appeal at each underlying docket on October 4, 2021.[2] The court subsequently ordered Appellant to file a Pa.R.A.P. 1925(b) statement; Appellant complied.

Appellant raises two issues for our review:

---

[2] This Court consolidated the appeals *sua sponte* on March 15, 2022.

Did the [trial] court err in [its] September 20, 2021 order by not addressing [Appellant's] motion to enforce plea agreement. The claim of enforcement of plea agreement was never understood and addressed. [The trial] court always has misconstrued this very issue, either by treating the motion as "PCRA" or simply not addressing it.

Did the [judge] err in denying [Appellant's] motion to enforce plea agreement, when such abuse of discretion caused prejudice, since matter of Commonwealth's interference by filing writ of *habeas corpus ad prosequendum*, with fake/faulty information, and matter of primary custody not addressed.

(Appellant's Brief at 4).

In his issues combined, Appellant argues that a negotiated term of his plea agreement was that the Commonwealth would not object to his immediate deportation. Appellant asserts that the Commonwealth reneged on its end of the bargain by actively taking steps to prevent Appellant's deportation by filing a writ of *habeas corpus ad prosequendum* shortly after sentencing. Appellant claims this writ prevented his immediate deportation to Pakistan. Had the writ not been filed, Appellant maintains he would have been deported in June 2015. Appellant emphasizes that he was already in the primary custody of ICE when the Commonwealth filed the writ.

Appellant insists the current claim has not been previously litigated because his prior filings involved whether immediate deportation was a term of his plea bargain. By contrast, Appellant now acknowledges that "immediate deportation" was not part of the plea deal, but he stresses that the Commonwealth **not objecting** to his immediate deportation was a bargained-

- 5 -

for term of the agreement. Appellant avers the courts have never addressed whether the Commonwealth's filing of the writ after sentencing constituted a violation of the plea agreement. Appellant submits the Commonwealth filed the writ in bad faith, as evidenced by the fact that no hearing ever took place in June 2015 as contemplated by the writ.

Further, Appellant argues the Commonwealth lacked authority to imprison Appellant where ICE retained "primary jurisdiction" over him in June 2015. Appellant claims the Commonwealth "borrowed" Appellant for purposes of the sentencing hearing but was required to return Appellant to ICE's primary custody thereafter. Likewise, Appellant suggests the Commonwealth "borrowed" Appellant for purposes of the post-sentencing writ and was required to return Appellant to ICE's primary custody when no hearing took place as contemplated by the writ. Appellant concludes the Commonwealth breached the plea agreement, and this Court must reverse the order denying his motion to enforce and expunge his conviction. We disagree.

Our review of this appeal implicates the following principles:

> [A] collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance. *See, e.g., Commonwealth v. Martinez*, 637 Pa. 208, 147 A.3d 517 (2016); *Commonwealth v. Fernandez*, 195 A.3d 299 (Pa.Super. 2018) (*en banc*); *Commonwealth v. Hainesworth*, 82 A.3d 444 (Pa.Super. 2013) (*en banc*), *appeal denied*, 626 Pa. 683, 95 A.3d 276 (2014); *Commonwealth v. Farabaugh*, 136 A.3d 995 (Pa.Super. 2016), *appeal denied*, 643 Pa. 140, 172 A.3d 1115 (2017); *Commonwealth v. Nase*, 104 A.3d 528 (Pa.Super. 2014), *appeal denied*, 640 Pa. 389, 163 A.3d 405 (2016).

*Compare Commonwealth v. James Johnson*, 200 A.3d 964 (Pa.Super. 2018) (stating generally that plea enforcement theory is unavailable as ground for collateral relief if there is no plea bargain to enforce). The designation of the petition "does not preclude a court from deducing the proper nature of a pleading." *See Commonwealth v. Porter*, 613 Pa. 510, 524, 35 A.3d 4, 12 (2012) (citing *Commonwealth v. Abdul–Salaam*, 606 Pa. 214, 996 A.2d 482 (2010) (involving deceptive labeling of PCRA pleading)).

Contract interpretation is a question of law, so "[o]ur standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary." *Gillard v. Martin*, 13 A.3d 482, 487 (Pa.Super. 2010). Plea bargains play a critical role in the criminal justice system of this Commonwealth:

> With respect to plea bargains, [t]he reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: [n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. Plea bargaining is not some adjunct to the criminal justice system; it is the criminal justice system. Accordingly, it is critical that plea agreements are enforced, to avoid any possible perversion of the plea bargaining system. The disposition of criminal charges by agreement between the prosecutor and the accused, …is an essential component of the administration of justice. Properly administered, it is to be encouraged. In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule…. A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain.

> Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. Specific enforcement of valid plea bargains is a matter of fundamental fairness. The terms of plea agreements are not limited to the

- 7 -

withdrawal of charges, or the length of a sentence. Parties may agree to—and seek enforcement of—terms that fall outside these areas.

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity. Regarding the Commonwealth's duty to honor plea agreements, well-settled Pennsylvania law states:

Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement.

*Farabaugh, supra* at 1001-02 (internal citations and quotation marks omitted).

We acknowledge that the analogy of a plea agreement as a contract is not a perfect one. For instance, unlike a typical contract, a plea agreement does not become binding on the parties upon their consent to terms; rather, a plea agreement is not valid and binding until it is evaluated and accepted by a third party, *i.e.*, a

trial court….

Nonetheless, as the **Hainesworth** [C]ourt recognized, plea agreements clearly are contractual in nature. **See Puckett v. United States**, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (stating[:] "Although the analogy may not hold in all respects, plea bargains are essentially contracts").

**Martinez, supra** at 231, 147 A.3d at 531 (one internal citation omitted). "[T]he convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term." **Id.** at 233, 147 A.3d at 532-33.

**Commonwealth v. Kerns**, 220 A.3d 607, 611-13 (Pa.Super. 2019).

Instantly, in prior filings and appeals, Appellant argued that his immediate deportation was a bargained-for term of his plea agreement. This Court has already considered and rejected that argument twice. **See Saleem I, supra**; **Saleem II, supra**. Thus, the law of the case doctrine precludes Appellant from raising that claim again. **See Commonwealth v. McCandless**, 880 A.2d 1262, 1267 (Pa.Super. 2005) (*en banc*), *appeal dismissed as improvidently granted*, 593 Pa. 657, 933 A.2d 650 (2007) (explaining that "law of the case doctrine" refers to family of rules which embody concept that court involved in later phases of litigated matter should not reopen questions decided by another judge of that same court or by higher court in earlier phases of matter).

Nevertheless, the record indicates that as part of Appellant's plea deal,

the Commonwealth **would not object** to Appellant's immediate deportation. (**See** N.T. Guilty Plea Hearing, 4/21/15, at 2); (Written Guilty Plea, 4/21/15, at 6). In an effort to distinguish the current filing from his prior claims for relief, Appellant insists that he is advancing for the first time his averment that the Commonwealth acted in bad faith to intentionally delay his deportation and violate the plea agreement by filing a writ of *habeas corpus ad prosequendum*. In other words, Appellant complains that the Commonwealth's filing of the writ constituted an "objection" to his immediate deportation in contravention of the plea deal.

At sentencing, the parties were under the impression that ICE had planned to deport Appellant to Pakistan within the week based on prior 2009 convictions. (**See** N.T. Sentencing, 6/3/15, at 4-7). Nevertheless, the prosecutor noted that deportation determinations were solely within the purview of the federal government. (**See id.** at 7-8).

Appellant, however, was not deported. Appellant insists deportation did not occur based on the filing of the writ at issue. The writ, signed by the trial court on June 10, 2015, states:

*WRIT OF HABEAS CORPUS AD PROSEQUENDUM*

TO: York County Prison—ICE

AND NOW, THIS 10th day of June 2015, upon motion of the District Attorney, WE COMMAND YOU that the body of [Appellant] in your prison under custody be brought before the Court of Common Pleas of Lebanon County, by delivering the said body to the Sheriff of Lebanon County Pennsylvania, on June 16, 2015 at 8:30 A.M. for [a]

> Scheduled Court appearance on … IDSI and related charges in certain proceedings which are now pending in said County of Lebanon and at the conclusion of the said hearing, the said [Appellant] is to be returned to the custody of the Sheriff of Lebanon County, or his designated representative, to be returned to your custody.

(Writ of *Habeas Corpus Ad Prosequendum*, filed 6/11/15, at 1). The parties agree that no hearing was held in connection with this writ.[3] The record also indicates that Appellant did not have IDSI or related pending charges at this time, as he had already been sentenced on those charges.

Significantly, however, Appellant cannot demonstrate that this writ constitutes an "objection" by the Commonwealth to Appellant's immediate deportation such that the Commonwealth violated the plea deal. Notwithstanding the language in the writ, there is no motion by the Commonwealth preceding the writ. (**See** Response to Appellant's Right to Know Inquiry, 7/30/20) (indicating there is no separate motion that preceded the writ or document filed "motion"). The record suggests the writ may have been signed and filed by the court mistakenly, without any request from the

_____

[3] On July 18, 2022, Appellant filed an application for relief in this Court seeking to introduce "new evidence" to support his claim of bad faith by the Commonwealth in the form of a letter from the Court Administrator dated July 5, 2022. The letter responds to an inquiry from Appellant and states, in relevant part, that no court hearing was scheduled in Appellant's case on June 16, 2015, following the filing of the writ of *habeas corpus*. While we grant Appellant's request to consider this "new evidence," we deny Appellant's request to grant his motion to enforce the plea agreement based on this "new evidence."

Commonwealth.[4]

Even if the writ had been filed at the request of the Commonwealth, such action is a far cry from "objecting" to Appellant's deportation. As the record demonstrated following the hearing on Appellant's first PCRA petition, the plea deal was that the Commonwealth would not take steps to actively prevent Appellant's deportation. (**See** PCRA Court Order, 3/24/16, at Finding of Fact B; N.T. PCRA Hearing, 3/24/16, at 35). Rather, the PCRA court noted that had the Commonwealth gone to the federal government and said not to deport Appellant, that action would have been a breach. (**See id.** at 39).

Notably, no action by the Commonwealth prevented ICE from deporting Appellant after the referenced June 16, 2015 hearing did not take place. Appellant certainly cannot show that the filing of the writ in June 2015 prevented the federal government from deporting Appellant for the following seven years. The Commonwealth simply had no control over whether the federal government chose to deport Appellant. (**See** Commonwealth's Brief at 15) (stating: "[T]he Commonwealth cannot speak as to why [deportation] did not occur because, as stated, deportation is well beyond the control of the Commonwealth"). On this record, we cannot say that the Commonwealth

---

[4] The Commonwealth also suggests that the writ might have been filed mistakenly. (**See** Commonwealth's Brief at 13).

breached the plea agreement.[5]  **See Kerns, supra**.  Accordingly, we affirm

the order denying Appellant's motion to enforce the plea agreement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2022

---

[5] Further, Appellant's argument that the Commonwealth lacked authority to imprison Appellant where he was in the "primary custody" of ICE merits no relief.  The case on which Appellant primarily relies, **Taccetta v. Federal Bureau of Prisons**, 606 Fed.Appx. 661, 663 (3d Cir. 2015), discusses the "primary custody doctrine," which applies where a defendant faces prosecution by both state **and** federal authorities, and determines where and how the defendant will serve any resulting sentence.  Those circumstances are simply not present here.