J-S56014-18

2019 PA Super 298

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT KERNS | : | |
| | : | |
| Appellant | : | No. 545 MDA 2018 |

Appeal from the Order Dated March 14, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000371-2001

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY GANTMAN, P.J.:                    **FILED OCTOBER 04, 2019**

Appellant, Scott Kerns, appeals from the order entered in the Berks County Court of Common Pleas, which denied his petition that he styled as a "*Nunc Pro Tunc* Motion to Open, and Vacate Sentence Due to Breach of Plea Agreement Pursuant to 42 Pa.C.S.A. § 5505."  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with involuntary deviate sexual intercourse ("IDSI"), sexual assault, rape, aggravated indecent assault, and indecent assault, where Appellant engaged in various sex acts in March through October of 2000, with a minor child under thirteen years old.  On May 14, 2001, Appellant entered an open guilty plea to one count of IDSI.  At the plea hearing, the court announced that Appellant would undergo an evaluation by the Sexual Offenders Assessment Board ("SOAB"), pursuant to Megan's Law II, and a possible hearing on whether Appellant should be classified as a

sexually violent predator ("SVP").  Appellant filed a motion to withdraw his plea on June 13, 2001, but he withdrew that motion on August 6, 2001.  After receiving the SOAB report, the Commonwealth moved for an SVP hearing.  On September 12, 2001, Appellant filed a motion for extraordinary relief challenging the constitutionality of the SVP provisions of Megan's Law II, which the court denied.  On January 18, 2002, the trial court determined the Commonwealth had met its burden to prove Appellant was an SVP and imposed SVP status, sentenced Appellant to 7½ to 20 years' incarceration, with credit for time served, and explained to him that he was subject to lifetime sex offender registration under Megan's Law II.  Appellant timely filed a notice of appeal on February 19, 2002.  On December 23, 2003, this Court affirmed the judgment of sentence.  ***See Commonwealth v. Kerns***, 844 A.2d 1282 (Pa.Super. 2003) (unpublished memorandum).  Appellant did not pursue further review, so the judgment of sentence became final on January 22, 2004, upon expiration of the 30 days for filing a petition for allowance of appeal with our Supreme Court.  ***See*** Pa.R.A.P. 1113 (governing time for filing petition for allowance of appeal with Pennsylvania Supreme Court).

Appellant *pro se* timely filed his first petition under the Post-Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546, on February 17, 2004.  The PCRA court appointed counsel on February 23, 2004, who filed a no-merit letter and petition to withdraw on April 20, 2004, pursuant to ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and

- 2 -

***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). On May 10, 2004, the PCRA court issued notice of its intent to dismiss, pursuant to Pa.R.Crim.P. 907, and granted counsel's petition to withdraw. Following Appellant's *pro se* response on May 25, 2004, the PCRA court denied and dismissed Appellant's petition on June 8, 2004. This Court affirmed on March 4, 2005. ***See Commonwealth v. Kerns***, 875 A.2d 388 (Pa.Super. 2005) (unpublished memorandum).

Appellant unsuccessfully litigated twelve more PCRA petitions. On October 14, 2016, Appellant *pro se* filed his 14th PCRA petition. On January 26, 2017, the PCRA court issued Rule 907 notice and dismissed the 14th petition on March 13, 2017. Appellant *pro se* timely filed a notice of appeal on April 5, 2017.

While that appeal was still pending, Appellant *pro se* filed a 15th PCRA petition on August 24, 2017, and a motion to stay the 15th petition until this Court disposed of his appeal regarding his 14th petition. The PCRA court denied Appellant's 15th PCRA petition on August 31, 2017.

On September 8, 2017, Appellant *pro se* filed a 16th PCRA petition. On September 11, 2017, Appellant filed a *pro se* motion to bar applicability of sex offender registration and/or petition for writ of *habeas corpus*. The PCRA court dismissed both the 16th PCRA petition and the *habeas corpus* petition on September 18, 2017.

Appellant timely filed *pro se* notices of appeal from the denials of his

15th and 16th PCRA petitions on September 28, 2017, and October 13, 2017, respectively. Appellant withdrew the appeal from the denial of his 15th PCRA petition on December 1, 2017. This Court affirmed the denial of Appellant's 16th PCRA petition on November 7, 2018. *See Commonwealth v. Kerns*, 201 A.3d 826 (Pa.Super. 2018) (unpublished judgment order) (affirming denial of Appellant's 16th PCRA petition for lack of jurisdiction, because appellate review of Appellant's 14th PCRA petition was still pending when Appellant filed his 16th petition).

With respect to Appellant's appeal from the denial of his 14th PCRA petition, this Court ultimately affirmed on November 7, 2017. *See Commonwealth v. Kerns*, 181 A.3d 386 (Pa.Super. 2017) (unpublished memorandum). Then Appellant sought further review in a timely filed *pro se* petition for allowance of appeal with our Supreme Court, which he filed on December 5, 2017. While that appeal was still pending, Appellant *pro se* filed his 17th effort to obtain collateral relief on December 26, 2017, and styled his pleading as a motion for "*Nunc Pro Tunc* Motion to Open, and Vacate Sentence Due to Breach of Plea Agreement Pursuant to 42 Pa.C.S.A. § 5505." The court denied relief on March 14, 2018. Appellant *pro se* timely filed a notice of appeal on March 27, 2018. On April 3, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on April 20, 2018. On June 11, 2018, our Supreme Court denied review of Appellant's 14th PCRA petition.

- 4 -

Appellant raises the following issues for our review:

> DID THE COURT ERR BY NOT ENFORCING THE PLEA AS IT IS WRITTEN[?]
>
> DID THE COURT ERR BY NOT HAVING A HEARING ON THE ISSUES[?]
>
> DID THE COURT ERR BY ACCEPTING THE D.A.'S REPLY WITHOUT [APPELLANT] HAVING A CHANCE TO REBUT IT SINCE APPELLANT NEVER RECEIVED A COPY OF THE D.A.'S ANSWER UNTIL THE ORDER WAS FILED[?]

(Appellant's Brief at 3).

Appellant argues the court and the Commonwealth breached the plea agreement because he is subject to sex offender registration when the possibility of sex offender registration was not an express term of his written or oral plea colloquies. Appellant avers the SVP designation after a SOAB evaluation and a Megan's Law hearing, plus the imposition of the registration requirements, exceeded his bargained-for exchange with the Commonwealth. Appellant maintains he is not attempting to withdraw his open guilty plea or attack its validity or the sentence of incarceration. Instead, he insists he is just trying to enforce the plea agreement as written, because it has no term in it about sex offender registration and SVP designation. Appellant complains the court should have held a hearing on his issue and erred by accepting the Commonwealth's answer to his petition without giving Appellant a chance to rebut it. Appellant concludes this Court should vacate his Megan's Law II registration requirements based on contract principles. We cannot agree.

A petition for collateral relief will generally be considered a PCRA petition

if it raises issues cognizable under the PCRA. *See Commonwealth v. Peterkin*, 554 Pa. 547, 553, 722 A.2d 638, 640 (1998); 42 Pa.C.S.A. § 9542 (stating PCRA shall be sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for same purpose). The plain language of the PCRA mandates that claims which could be brought under the PCRA, must be brought under the PCRA. *Commonwealth v. Hall*, 565 Pa. 92, 96-97, 771 A.2d 1232, 1235 (2001). The timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Zeigler*, 148 A.3d 849, 853 (Pa.Super. 2016). A PCRA petition must be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is "final" at the conclusion of direct review or at the expiration of time for seeking review. 42 Pa.C.S.A. § 9545(b)(3). The exceptions to the PCRA time-bar allow for very limited circumstances under which the late filing of a petition will be excused; a petitioner asserting an exception must file a petition within 60 days of the date the claim could have been presented. *See* 42 Pa.C.S.A. § 9545(b)(1-2).

On the other hand, a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance. *See, e.g., Commonwealth v. Martinez*, 637 Pa. 208, 147 A.3d 517 (2016); *Commonwealth v. Fernandez*, 195 A.3d 299 (Pa.Super. 2018) (*en banc*); *Commonwealth v. Hainesworth*, 82 A.3d 444 (Pa.Super. 2013) (*en banc*), *appeal denied*, 626

Pa. 683, 95 A.3d 276 (2014); **Commonwealth v. Farabaugh**, 136 A.3d 995 (Pa.Super. 2016), *appeal denied*, 643 Pa. 140, 172 A.3d 1115 (2017); **Commonwealth v. Nase**, 104 A.3d 528 (Pa.Super. 2014), *appeal denied*, 640 Pa. 389, 163 A.3d 405 (2016). **Compare Commonwealth v. James Johnson**, 200 A.3d 964 (Pa.Super. 2018) (stating generally that plea enforcement theory is unavailable as ground for collateral relief if there is no plea bargain to enforce). The designation of the petition "does not preclude a court from deducing the proper nature of a pleading." **See Commonwealth v. Porter**, 613 Pa. 510, 524, 35 A.3d 4, 12 (2012) (citing **Commonwealth v. Abdul–Salaam**, 606 Pa. 214, 996 A.2d 482 (2010) (involving deceptive labeling of PCRA pleading)).

Contract interpretation is a question of law, so "[o]ur standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary." **Gillard v. Martin**, 13 A.3d 482, 487 (Pa.Super. 2010). Plea bargains play a critical role in the criminal justice system of this Commonwealth:

> With respect to plea bargains, [t]he reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: [n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. Plea bargaining is not some adjunct to the criminal justice system; it is the criminal justice system. Accordingly, it is critical that plea agreements are enforced, to avoid any possible perversion of the plea bargaining system. The disposition of criminal charges by agreement between the prosecutor and the accused, …is an essential component of the administration of justice. Properly administered, it is to be encouraged. In

this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule…. A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain.

Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. Specific enforcement of valid plea bargains is a matter of fundamental fairness. The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to—and seek enforcement of—terms that fall outside these areas.

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity. Regarding the Commonwealth's duty to honor plea agreements, well-settled Pennsylvania law states:

> Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement.

- 8 -

***Farabaugh, supra*** at 1001-02 (internal citations and quotation marks omitted).

> We acknowledge that the analogy of a plea agreement as a contract is not a perfect one.  For instance, unlike a typical contract, a plea agreement does not become binding on the parties upon their consent to terms; rather, a plea agreement is not valid and binding until it is evaluated and accepted by a third party, *i.e.*, a trial court.  …
>
> Nonetheless, as the ***Hainesworth*** court recognized, plea agreements clearly are contractual in nature.  ***See Puckett v. United States***, 556 U.S. 129, 137 (2009) (stating[:] "Although the analogy may not hold in all respects, plea bargains are essentially contracts").

***Martinez, supra*** at 231, 147 A.3d at 531 (one internal citation omitted). "[T]he convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement.  Thus, a court must determine whether an alleged term is part of the parties' plea agreement.  If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term." ***Id.*** at 233, 147 A.3d at 532-33.

As in all contracts: "The laws in force at the time the parties enter into a contract are merged with the other obligations [which] are specifically set forth in the agreement." ***Empire Sanitary Landfill, Inc. v. Com., Dept. of Environmental Resources***, 546 Pa. 315, 340, 684 A.2d 1047, 1059 (1996); ***Nase, supra*** (stating guilty plea to crime that is subject to existing sex-offender registration requirements makes registration consequences unequivocally part of plea negotiations and arrangement).  When sex-offender registration statutes are in force and applicable to the offense(s) at issue, sex-

offender registration is an implied term of the plea bargain; and this Court will not consider sex-offender registration as a breach of a plea agreement unless non-registration was made part of the plea deal. ***See Commonwealth v. Giannantonio***, 114 A.3d 429, 434 (Pa.Super. 2015).

Instantly, Appellant's claim is centered on his plea agreement and his attempt to enforce what he believes was the bargained-for exchange he made on May 14, 2001. This claim, to date, arguably falls outside of the PCRA. ***See Martinez, supra***; ***Fernandez, supra***. ***See also*** 42 Pa.C.S.A. § 9543(a)(2) (enumerating cognizable issues under PCRA).[1]

In response to Appellant's contract claim, the trial court reasoned as

---

[1] If Appellant's current petition were a straightforward challenge to the legality of his sentence, per ***Commonwealth v. Muniz***, 640 Pa. 699, 164 A.3d 1189 (2017), it would fall under the PCRA and be deemed untimely. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(i), (vii); ***Commonwealth v. Fowler***, 930 A.2d 586 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008) (holding collateral attack on legality of sentence must be raised in timely PCRA petition; challenges to legality of sentence must first satisfy PCRA time limits or one of statutory exceptions). The judgment of sentence became final on January 22, 2004, upon expiration of the 30 days for Appellant to file a petition for allowance of appeal with our Supreme Court. ***See*** Pa.R.A.P. 1113. Appellant filed the current *pro se* petition for collateral relief on December 26, 2017, which would be patently untimely as a PCRA petition. ***See*** 42 Pa.C.S.A. § 9545(b)(1). ***See also Commonwealth v. Murphy***, 180 A.3d 402 (Pa.Super. 2018), *appeal denied*, ___ Pa. ___, 195 A.3d 559 (2018) (stating petitioner cannot rely on ***Muniz*** to meet timeliness exception under Section 9545(b) unless and until Supreme Court allows). Further the amendment to Section 9545(b)(2), that now allows a PCRA petition invoking a timeliness exception to be filed within **one year** of the date the claim could first have been presented, would not apply to Appellant's case, which arose before the effective date of the amendment. ***See*** Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018].

follows:

> Here, [Appellant] entered an open plea on May 14, 2001. [Appellant pled] guilty to one count of [IDSI]. At the time of the guilty plea, sentencing was deferred for a psychological evaluation by the [SOAB]. This distinguishes [Appellant's] case from that argued in **Hainesworth**. In **Hainesworth**, at the time of the guilty plea, the Commonwealth repeatedly stated that the [d]efendant would not be subjected to a registration requirement. In fact, the Superior Court held that the plea agreement, "appears to have been precisely structured so that Hainesworth would not be subjected to a registration requirement." [**Id.**] at 448.

> In this case, at the time [Appellant] entered his open plea, there were no negotiated terms put on the record that would show that the plea was in any way structured for [Appellant] to avoid registration requirements. During the Megan's Law Hearing and Sentencing, counsel for [Appellant] stated that [Appellant] did take an open plea, and the only negotiated term put on the record went to the recommendation from the District Attorney as to [Appellant's] minimum sentence. Further, at the time [Appellant] was sentenced, he was informed that he would have to register his address for the rest of his life.

> While [Appellant] contends that he entered into a guilty plea with the understanding that he would not be subjected to any registration requirements, there is nothing in the record to support his claim. Rather, what information is contained within the record does not indicate that [Appellant's] plea was negotiated in any way to avoid registration requirements. Further, the [s]entencing [c]ourt informed [Appellant] that he would need to register his address for the rest of his life, after a[n SVP] hearing was held. Therefore, [Appellant's] plea agreement was not breached.

Trial Court Opinion, filed May 22, 2018, at 4-5 (most internal citations omitted). The record supports the trial court's analysis. **See Fernandez, supra**; **Farabaugh, supra**.

The written plea colloquy contains no provision regarding sex offender registration and SVP classification, but the oral colloquy does contain an open discussion of a pending SOAB evaluation, Megan's Law, and the SVP hearing, which the court deferred to a later date. (*See* Oral Plea Colloquy, 5/14/01, at 7.) Appellant subsequently moved to withdraw his plea pre-sentence but then withdrew his motion to withdraw the plea on August 6, 2001. Counsel informed the court on the record during the hearing on August 6, 2001, that counsel would advise Appellant about cooperating with the SOAB assessment and Megan's law. The court stated sentencing would be rescheduled. (*See* Hearing, 8/6/01, at 7.) Appellant later submitted to the SOAB evaluation.

After the SVP hearing and at sentencing on January 18, 2002, the court informed Appellant of his SVP status and his lifetime sex offender registration requirements under Megan's Law II. Nothing in the certified record indicates that Appellant's guilty plea rested on an express promise or agreement by the Commonwealth for non-registration. *See Martinez, supra*; *Giannantonio, supra*; *Nase, supra*. To the contrary, the record in this case makes clear Appellant's sex-offender registration was a term contemplated and included in Appellant's plea agreement. *See Farabaugh, supra*. Appellant cannot now isolate the plea "**as written**," when the totality of the circumstances shows Appellant entered his guilty plea in 2001, to a sex offense reportable under Megan's Law, with the definite understanding that he was subject to lifetime registration as a sex offender. *See id.* Therefore, we conclude the

court properly denied Appellant's most recent petition for collateral relief on the grounds asserted.[2]

With respect to Appellant's complaint that the court abused its discretion when it dismissed the current petition without holding a hearing, Appellant cites to **Commonwealth v. Burton**, 638 Pa. 687, 158 A.3d 618 (2017), for the proposition that the court must hold a hearing to determine "whether the issues are good issues or not." (Appellant's Brief at 9). Appellant, however, does not provide a cogent supporting argument and instead offers only a conclusory statement. Absent more, this issue is arguably waived. **See** Pa.R.A.P. 2119(a); **Commonwealth v. Kareem Johnson**, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009), *cert. denied*, 562 U.S. 906, 131 S.Ct. 250, 178 L.Ed.2d 165 (2010) (stating claim is waived where appellate brief does not include citation to relevant authority or fails to develop issue in any meaningful fashion capable of review). Further, the trial court properly treated Appellant's current petition as outside the PCRA, so it was not subject to the rules regarding evidentiary hearings under the PCRA. **See** Pa.R.Crim.P. 907. Additionally, a court analyzes a plea agreement using contract concepts, which involve questions of law that generally do not require additional fact finding. **See Gillard, supra**. Therefore, Appellant was not entitled to a hearing on his

---

[2] Appellant committed his offense during the active period of Megan's Law II, and is subject to lifetime registration. **See** 42 Pa.C.S.A. § 9795.1(b)(2) (effective July 10, 2000 to February 19, 2001) (stating individuals convicted of IDSI are subject to lifetime registration).

claim, and the court properly declined to hold one.

With respect to Appellant's contention that the court violated his equal protection rights because the court denied his petition before he had received a copy of the Commonwealth's answer, Appellant does not cite to any legal authority on this issue. Thus, this issue is waived. *See* Pa.R.A.P. 2119(a); ***Kareem Johnson, supra***. Moreover, even if Appellant had properly preserved this issue, he would not be entitled to relief. On January 3, 2018, the court ordered the Commonwealth to file an answer to Appellant's petition, which the Commonwealth filed on February 2, 2018. *See* Pa.R.Crim.P. 575(B) (stating answer to motion is not required unless judge orders filing of answer). Attached to the Commonwealth's answer in the certified record is a certificate of service dated February 2, 2018, which includes Appellant's name and address, and indicates Appellant was served by personal delivery and by regular mail, in accordance with Pa.R.Crim.P. 576(B) (providing that written answers must be served upon each party and all documents filed in court must include certificate of service). The record is unclear when Appellant actually received service. Appellant does not state what, if any, prejudice he sustained by the purported delay in receipt of service. Additionally, the Commonwealth's answer included a recitation of the facts and procedural history of the case and responded to each point Appellant raised in his petition, but the Commonwealth did not raise any new issues. Therefore, Appellant had nothing new to respond to and any response he filed would have been limited

and repetitive. *See generally Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214 (1999) (reiterating that purpose of reply is to respond to new issues raised in answer; reply cannot be used to raise new issues or rehash issues previously raised). Thus, we conclude Appellant was given appropriate equal protection and due process, where the trial court thoroughly addressed his issues and he was still able to raise any errors on appeal related to the court's denial of his petition.

Based on the foregoing, we hold generally that if there is a plea bargain to enforce, review of a genuine petition for specific performance of a plea agreement remains outside the aegis of the PCRA. We further hold that, where existing law requires sex-offender registration for the offense(s) at issue, sex-offender registration is an implied term of any plea agreement; in order to eliminate sex-offender registration, the plea agreement must contain an express provision for **non-registration**. Accordingly, we affirm.[3]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/04/2019

---

[3] Due to our disposition, we deny Appellant's open motion to defer sex-offender registration until resolution of this appeal.