J-S29042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK M. RING | : | |
| | : | |
| Appellant | : | No. 1324 MDA 2022 |

Appeal from the Order Entered August 19, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004097-2006

BEFORE: MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED DECEMBER 01, 2023**

Appellant, Mark M. Ring, appeals from the denial of a motion alleging that the Commonwealth breached his 2007 plea agreement by making negative parole recommendations in 2018, 2019, and 2021. Upon review, we agree that the plea enforcement motion could be reviewed in part as a motion seeking specific performance that was cognizable beyond the ambit of the statutory limitations applicable to petitions for collateral review under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.* We affirm the denial of Appellant's motion on the basis that the plea agreement was silent as to Appellant's parole eligibility and thus the Commonwealth's negative parole recommendations could not provide Appellant any basis for relief as a matter of contract law.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On July 6, 2006, fifty-three-year-old Joseph Tarreto was exiting his backyard in the unit block of West Charles Street in Plains Township, Pennsylvania, to take his dog for a walk when Appellant confronted him. N.T. 3/15/07, 12-13. A fight ensued during which Mr. Tarreto's fiancée, Elizabeth Powell, tried to get between the two men. *Id.* at 13. Ms. Powell retreated into her home to call 9-1-1 when she heard Mr. Tarreto yell before several gun shots were fired. Responding police officers found Mr. Tarreto, then dead, in a grassy area about twenty feet from his backyard. *Id.* Ms. Powell identified Appellant as the "person who was involved in the attack" on her fiancé and directed the police to his residence. *Id.* Appellant returned to his own home after the shooting and admitted to his girlfriend that he had shot Mr. Tarreto. *Id.* at 14. Police recovered a 38-caliber gun from Appellant's basement that was later determined to have been used in the shooting. *Id.*

On March 15, 2007, Appellant entered a negotiated guilty plea to murder of the third degree.[1] N.T. 3/15/07, 2-18. In exchange for the plea, the Commonwealth agreed to recommend a sentence of twelve to twenty-four years' imprisonment and stipulated that Appellant was entitled to credit for time served, starting on July 4, 2006. *Id.* at 2-4; Plea Agreement, 3/15/07, 1-2. After sentencing was deferred for the preparation of a pre-sentence investigation report, the trial court imposed the agreed-upon term of imprisonment. Plea Agreement, 3/15/07, 1; N.T. 3/15/07, 4, 18-19;

---

[1] 18 Pa.C.S. § 2502(c).

Sentencing Order, 4/26/07, 1; N.T. 4/26/07, 22. Appellant did not file post-sentence motions or an appeal.

Appellant timely filed a *pro se* first PCRA petition alleging that ineffective assistance of his prior counsel caused him to enter a guilty plea that was not knowingly, voluntarily, and intelligently made. *Pro Se* PCRA Petition, 4/9/08, § 5(A). Counsel was appointed. No amended petition was filed. The PCRA court dismissed the *pro se* petition after a hearing, during which the court heard testimony from Appellant and both of his trial attorneys, and the court found no merit to his ineffective assistance claim. N.T. 5/28/08, 49-50; Order, 5/28/08, 1. This Court affirmed the dismissal, and our Supreme Court denied a subsequent petition for allowance of appeal. *Commonwealth v. Ring*, 996 A.2d 554 (Pa. Super. 2010) (table) (1118 MDA 2008), *allocatur denied*, 5 A.3d 819 (Pa. 2010) (table) (305 MAL 3010).

While Appellant's appeal from the dismissal of his first PCRA petition was pending with this Court, he filed a *pro se* second PCRA petition. Because of Appellant's pending appeal, the PCRA court did not rule on the new petition. Appellant filed a *pro se* amended second PCRA petition with a brief on November 14, 2011.[2] No action was taken on the second petition until

---

[2] The claim raised in the second petition was based on "corruption" in the Luzerne County Court System and alluded to the scandal called "Kids-for-Cash," that involved former Judges Mark Ciavarella and Michael Conahan, and which first came to light in 2008. *Pro Se* Second PCRA Petition, 3/30/09, § 5(A); *Pro Se* Amended Second PCRA Petition, 11/14/11, 3; *Commonwealth v. Ring*, 2015 WL 7721930, *2 & n.2 (Pa. Super., filed Jan. 15, 2015)
*(Footnote Continued Next Page)*

Appellant filed a *pro se* "Motion for Disposition" on October 8, 2013, in which he requested a ruling on the second petition. Counsel was appointed and later filed a **Finley** "no-merit" letter along with a petition to withdraw as counsel.[3] The PCRA court issued a dismissal notice pursuant to Pa.R.Crim.P. 907, in which the court found that the second petition was untimely and jurisdictionally time-barred and Appellant's new claims of ineffective assistance of counsel and an unlawfully induced plea were previously litigated. Rule 907 Notice, 1/24/14, 1-2. Appellant filed a *pro se* objection and a supplement to his petition, following the grant of his counsel's withdrawal motion. The PCRA court dismissed the second PCRA petition on March 18, 2014. This Court affirmed. **Commonwealth v. Ring**, 118 A.3d 444 (Pa. Super. 2015) (table) (718 MDA 2014).

While the second PCRA appeal was pending, Appellant filed a motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1. In the motion, Appellant sought "touch DNA" testing of a wooden spindle to advance a self-defense claim. Motion for DNA Testing, 4/14/14, ¶¶ 9-10. After the second PCRA appeal concluded, the PCRA court issued a Rule 907 dismissal notice

_____

(memorandum opinion). In that scheme Judges Ciavarella and Conahan accepted money from the builders of for-profit juvenile detention centers in exchange for imposing overly harsh adjudications on offenders who would be housed in those facilities. Appellant's only allegation of the former judges' involvement in his case was that, in June 2008, Judge Ciavarella appointed counsel to represent him in connection with his appeal from the dismissal of his first PCRA petition. *Pro Se* Amended Second PCRA Petition, 11/14/11, 6; **Ring**, 2015 WL 7721930, *3 n.6.

[3] **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

with respect to the motion requesting DNA testing. Rule 907 Notice, 3/12/15, 1-2. After Appellant filed objections and an amended motion for DNA testing, the Commonwealth filed an ordered response and the PCRA court denied the motion. Dismissal Order, 6/17/15, 1. This Court affirmed. **Commonwealth v. Ring**, 145 A.3d 796 (Pa. Super. 2016) (table) (1238 MDA 2015).

On February 7, 2022, Appellant filed a petition that is the subject of this appeal and which Appellant styled as a "motion to vacate and resentence." In the motion, Appellant asserted that the Commonwealth failed to honor "the exact terms" of his plea agreement. Plea Enforcement Motion, 2/7/22, 1. In particular, he claimed that the Commonwealth was not complying with his plea agreement because it submitted negative parole recommendations for him in 2018, 2019, and 2021. **Id.** at ¶ 7; Memorandum in Support of Plea Enforcement Motion, 3/9/22, 2. Appellant characterized the Commonwealth's actions as a breach of his plea agreement while admitting that the agreement was silent on the subject of parole decisions: "Although there were no [e]ssential terms in the [p]lea [a]greement precluding the [District Attorney's] office from taking a negative position on [Appellant's] parole decisions, there was no [e]ssential term in the [p]lea [a]greement allowing the [District Attorney's] office to do so, under [c]ontract law." Memorandum in Support of Plea Enforcement Motion, 3/9/22, 1-2. As a result of a supposed breach in those respects, Appellant requested resentencing to "time served" or any remedy deemed necessary by the plea court. **Id.** at 5.

The Commonwealth filed a response in which it argued that Appellant's motion should be treated as an untimely PCRA petition and, in any event, Appellant's breach claim was meritless because the plea agreement did not guarantee parole or that the Commonwealth would refrain from making any negative parole recommendations. Commonwealth's Response, 5/25/22, 3-4. Appellant subsequently responded that his motion was not a PCRA petition and alleged that the Commonwealth committed intentional misrepresentation, and thus unlawfully induced his plea, by not revealing at his plea hearing a supposed plan to later recommend against his parole. Appellant's Answer, 6/22/22, 1-3. On August 18, 2022, the lower court denied Appellant's motion.[4] Order, 8/18/22, 1. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[5] Notice of Appeal, 9/16/22, 1; Rule 1925(b) Order, 9/19/22, 1; Rule 1925(b) Statement, 10/11/22, 1-2.

Appellant presents the following questions for our review:

_____

[4] We note that the jurist who denied the instant motion was not the judge who presided over Appellant's plea hearing. **See** Lower Court Opinion, 12/14/22, 1 n.2.

[5] Even without consideration of the prisoner mailbox rule, the 21-day deadline for the filing the Rule 1925(b) statement would have been extended to 22-days in this instance where the 21st day of the filing period fell on an observed court holiday. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall … on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."); **see also In re Schedule of Holidays**, No. 544 Judicial Administration Docket (Pa., filed Aug. 30, 2021) (identifying October 10, 2022 as an observed holiday).

I.      Under contract law and [Pa.R.Crim.P.] 590(B)(2), did the negotiated plea agreement's min[imum]/max[imum] years and exact terms create an objectively reasonable expectation to [Appellant], that as long as he was in compliance with the terms, he would be considered for parole by the parole board at his minimum sentence completion without negative recommendations or objections by any of the parties to the agreement or to any future or subsequent parole decisions?

II.     Under contract law and negotiated plea agreements, did the [District Attorney's] Office, by remaining silent about their intentions to submit negative recommendations to the parole board, intentionally misrepresent and secure a fraudulently induced plea agreement?

III.    Did the lower court commit error by representing [Appellant]'s motion to vacate and resentence as a PCRA petition?

IV.     Did the lower court err by not issuing a ruling of estoppel to enjoin the [District Attorney's] Office from submitting further negative recommendations to the Parole Board?

Appellant's Brief at 3 (original in all caps; suggested answers and lower court determinations omitted).

**I.**

In his first issue, Appellant asserts that he entered his plea agreement with the "understanding that, as long as he was in compliance with the exact terms set forth in the agreement, he would be considered for parole by the parole board upon reaching his minimum term of 12 years **WITHOUT** objections or negative recommendations by the parties to the plea agreement and those represented by the [District Attorney's] office." Appellant's Brief at 8 (emphasis in original). He implies that the Commonwealth needed to

bargain for the power to later make negative parole recommendations and, in the absence of such a bargain, the Commonwealth breached the plea agreement by making the parole recommendations. *Id.* ("The court did not include any terms that the [C]ommonwealth would have the power to issue negative recommendations to the parole board."). Appellant characterizes his underlying substantive claim as one seeking specific performance as a matter of contract law: "Ring is challenging the [C]ommonwealth's actions for going outside the plea agreement and submitting negative recommendations to the parole board as a breach of contract action." *Id.* at 15.

The lower court advises us that it found no basis for a contractual breach of the plea agreement because the agreement was silent on issues concerning parole and parole-related recommendations:

> The [plea] agreement here is silent regarding the Commonwealth's ability to file negative recommendations with the Parole Board, a fact that [Appellant] concedes. Nor does the agreement indicate that [Appellant] would be guaranteed parole. Further, [Appellant] does not argue that the Commonwealth made any oral representations to him or to the court regarding recommendations to the Parole Board or otherwise. Accordingly, [Appellant's] guilty plea here clearly does not rest on the promise or agreement of the [District Attorney] not to make a negative recommendation regarding parole. As a result, there was no breach of the plea agreement.

Lower Court Opinion, 12/14/22, 10 (record citation omitted). As the record supports the lower court's interpretation of the plea agreement, we agree that Appellant has failed to demonstrate a breach entitling him to a remedy as a matter of contract law.

"[E]ven though a plea agreement arises in a criminal context, it remains contractual in nature and is to be analyzed under contract law standards." *Commonwealth v. Hainesworth*, 82 A.3d 444, 449 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Contract interpretation is a question of law, so [o]ur standard of review over questions is *de novo* and to the extent necessary, the scope of our review is plenary." *Commonwealth v. Kerns*, 220 A.3d 607, 612 (Pa. Super. 2019) (citation and internal quotations omitted).

This Court has explained:

> Assuming the plea agreement is legally possible to fulfill, when the parties enter the agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. Specific enforcement of valid plea bargains is a matter of fundamental fairness. …

*Kerns*, 220 A.3d at 612 (citation omitted). "Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement." *Id.* at 613 (citation omitted). Additionally, the terms of a negotiated plea agreement shall generally be stated on the record, in open court.[6] Pa.R.Crim.P. 590(B)(1).

_____

[6] Rule 590(B)(1) also permits the trial court to order, for good cause and with both parties' consent, "that specific conditions in the agreement be placed on the record *in camera* and the record sealed." Pa.R.Crim.P. 590(B)(1). Neither the record, nor the arguments of the parties suggest that additional terms for the plea agreement in this case needed to be reserved for an *in camera* conference.

With regard to plea agreements, "it is critical that [they] are enforced to avoid any possible perversion of the plea bargaining system." **Hainesworth**, 82 A.3d at 449 (citation and internal quotations marks omitted).

> Plea bargains which are entered knowingly and voluntarily are viewed with favor in this Commonwealth. If a trial court accepts a plea bargain, the defendant who has given up his constitutional right to trial by jury must be afforded the benefit of all promises made by the district attorney. Specific enforcement of valid plea bargains is a matter of fundamental fairness.

**Id.** (citations and internal quotation marks omitted). Further, "disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication." **Kerns**, 220 A.3d at 612 (citation omitted). "Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity." **Id.** (citation omitted).

In this case, the lower court is correct that the plea agreement makes no reference to any promises concerning the Commonwealth's ability to later make negative parole recommendations. The terms of the plea agreement, which were reduced to a written agreement and accepted by the parties at the plea hearing, included the following terms:

1.      The Defendant, Mark M. Ring, knowingly, intelligently, and voluntarily agrees to plead guilty to Murder of the Third Degree, 18 Pa.C.S.A. §[ ]2502(c), a felony of the first degree (F1).

2.      There is an agreement between the parties as to sentencing. The Commonwealth and Defense agree on a sentence of a minimum of twelve (12) years to a maximum of twenty-four (24) years['] incarceration.

3.      The Commonwealth and Defense agree that a pre-sentence investigation shall be ordered by the Court prior to sentencing.

4.      The Defendant shall pay restitution to be determined by the Luzerne County Adult Probation & Parole Department.

5.      The Defendant shall pay the normal and customary costs of prosecution.

6.      The Defendant shall submit a DNA sample.

7.      The Defendant will have no contact, either directly or indirectly, with the victim's family, including the victim's former fiancée, Elizabeth Powell.

8.      The Defendant is legally entitled to credit for time served from July 4, 2006[,] until the date of sentencing.

Plea Agreement, 3/15/07, 1-2; N.T. 3/15/07, 2-6.

The terms favorable to Appellant – and enforceable through specific performance – were "an agreement … as to sentencing" and an agreement that Appellant was entitled to a credit for time served starting on the date of his arrest. A simple review of the stated terms, under an objective review, does not support the conclusion that Appellant reasonably understood that the Commonwealth would be hindered from making any recommendations concerning subsequent parole decisions. Eligibility for parole consideration is

- 11 -

a function of an imprisonment term, but a parole recommendation *made years after sentencing* is not part of an agreed-upon state sentence imposed by a trial court. ***See, e.g., Commonwealth v. Lee***, 876 A.2d 408, 412 (Pa. Super. 2005) ("Inasmuch as the decision to grant parole rests exclusively with the [Pennsylvania Board of Probation and Parole], the issue of parole is not a fundamental norm underling the sentencing process."). Accordingly, the "agreement … as to sentencing" in this case had no bearing on the Commonwealth's ability to make a negative parole recommendation when Appellant satisfied his minimum imprisonment term.[7]

The Commonwealth committed no breach of the plea agreement in this case by making negative parole recommendations. The fact that the Commonwealth later made negative parole recommendations did not constitute an addition to the imprisonment term that Appellant was promised. Appellant still received exactly what he was promised: a prison term with a minimum term of twelve years and a maximum term of twenty-four years

---

[7] While the parties do not point to any caselaw addressing plea agreements that contemplate parole recommendations, and our research fails to uncover any prior opinions addressing similar fact patterns, we find no reasons why that could not have been a bargained-for term that could have been made part of another hypothetical plea agreement. We note that we have previously enforced plea bargain terms requiring a prosecutor to remain silent as to any sentencing recommendation in cases where the parties could not reach an agreement as to a recommended sentence. ***See Commonwealth v. Martinez***, 539 A.2d 399, 403-04 & n.2 (Pa. Super. 1988) (remanding for resentencing by another judge where a prosecutor breached an agreement to make no recommendation as to sentencing and the defendant did not raise a challenge to the validity of his guilty plea).

with credit for time served from the date of his arrest. There being no breach of the plea agreement, Appellant's first issue fails for lack of merit.

## II.

In his second issue, Appellant asserts that the Commonwealth committed an intentional misrepresentation by not informing him at the time of his plea of its supposed intention to submit negative recommendations for parole (after the service of his minimum twelve-year imprisonment term) and, as a result, the Commonwealth fraudulently induced the entry of his plea. Appellant's Brief at 16-19. This claim is unreviewable where it could only be pursued through a timely-filed PCRA petition or an untimely-filed PCRA petition in which Appellant pleaded and offered to prove the applicability of an exception to the PCRA's one-year time-bar. Even assuming that we could address the claim on the merits, Appellant would not be entitled to relief because the Commonwealth had no burden to address his parole eligibility at the plea hearing and Appellant's lack of knowledge concerning the parole process had no bearing on the voluntariness of his plea.

Appellant appears to base the instant claim on a contract law theory by citing, *inter alia*, the second restatement of contracts for the elements of a fraudulent misrepresentation claim. Appellant's Brief at 19; ***see also*** Appellant's Answer, 6/22/22, 2-3. This claim in unreviewable for our purposes because our Supreme Court has stated that "claims that **could** be brought under the PCRA **must** be brought under that Act. No other statutory or common law remedy 'for the same purpose' is intended to be available;

instead, such remedies are explicitly 'encompassed' within the PCRA."

***Commonwealth v. Hall***, 771 A.2d 1232, 1235 (Pa. 2001) (emphasis in original); ***see also Commonwealth v. Peterkin***, 722 A.2d 638, 640 (Pa. 1998) (stating the PCRA shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose). A claim of unlawful inducement of Appellant's plea could only be raised in a PCRA petition as a claim of that nature is specifically recognized as cognizable under the PCRA. ***See*** 42 Pa.C.S. § 9543(a)(2)(iii) (among the claims cognizable under the PCRA are allegations of "[a] plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent").

Appellant both argues for and against the application of the PCRA and its jurisdictional time-bar as follows:

> One possibility for the lower court's other jurisdiction would be through Title 42 Pa.C.S. §[ ]9545(b)[(1)](ii) where the facts were unknown to [Appellant] and could not have been ascertained by due diligence. The Comm[onwealth] raises 42 Pa.C.S. §[ ]9543(a)(2)(iii) and suggests that [Appellant's] issue is cognizable but [Appellant] is not claiming innocence so [the] Comm[onwealth's] rationale fails.

Appellant's Reply Brief at 3. Appellant's attempt to assert the time-bar exception at § 9545(b)(1)(ii) in passing is unavailing where Appellant failed to make any time-bar exception arguments before the lower court. Appellant waived any time-bar exception arguments by not preserving them in a PCRA

petition filed with the lower court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see, e.g., Commonwealth v. Burton*, 936 A.2d 521 (Pa. Super. 2007) ("exceptions to the time bar must be pled in the PCRA petition, and may not be raised for the first time on appeal").

To the extent that Appellant argues that his plea inducement claim is not cognizable under the PCRA and thus he is not subject to the PCRA's timeliness requirements on account of his decision to omit a claim of innocence for purposes of review under 42 Pa.C.S. § 9543(a)(2)(iii), he fails to account for prior decisions of this Court and our Supreme Court which have treated claims of plea inducement caused by breached plea bargains as cognizable claims for collateral review under the PCRA and its pre-cursor act, the Post Conviction Hearing Act. *See Commonwealth v. Zuber*, 353 A.2d 441, 443 n.1 (Pa. 1976) (post-conviction petition under the PCHA raised a cognizable claim where defendant contended that his guilty plea was involuntary because of a breached plea bargain); *Commonwealth v. Kroh*, 654 A.2d 1168, 1171 n.1 (Pa. Super. 1995) (explaining that a claim that defendant's guilty plea was unlawfully induced where the Commonwealth breached a plea agreement is cognizable under the PCRA). Where similar claims have been reviewed under our post-conviction collateral review statutory schemes – without specific reference to adjoining claims of innocence – we will not accept Appellant's baldly-stated assertion that his plea inducement claim is not cognizable under the PCRA. *See* 42 Pa.C.S. § 9542 (The PCRA "shall be the sole means of

obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and *coram nobis*.").

Even if we had jurisdiction to address a claim that the Commonwealth unlawfully induced Appellant's plea by not apprising him of a future intention to make negative parole recommendations (assuming that the Commonwealth was contemplating Appellant's parole eligibility at the time of the 2007 plea hearing), Appellant's theory for inducement fails due to our holding that there was no breach in response to his first claim presented. If there was no term of the plea agreement that was related to parole or future parole recommendations, the Commonwealth had no burden to make any expression to Appellant concerning his future parole eligibility. In turn, the Commonwealth's silence at the plea hearing concerning future parole recommendations had no bearing on the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (there is no constitutional or statutory requirement that a federal court advise a defendant about parole eligibility in order for the defendant's plea to qualify as voluntary); *Commonwealth v. Stark*, 698 A.2d 1327, 1331-32 (Pa. Super. 1997) (holding that courts need not inform defendants of parole eligibility circumstances at guilty plea hearings, and relatedly only need to inform defendants, among other necessary elements for a voluntary plea colloquy, of the permissible range of sentences and the maximum punishment that might be imposed; treating a defendant's eligibility for parole as a "collateral consequence" of a guilty plea);

*id.* at 1332 ("we hold that the court need not advise a pleading defendant of the release rules of the Pennsylvania Board of Probation and Parole or his chances for parole, even assuming the court could predict such an administrative procedure.").

As we will address *infra* in section III, Appellant could present a specific performance claim based on a contract law theory outside the confines of a proceeding controlled by the PCRA. At the same time, Appellant could not use a plea enforcement motion as a mechanism for seeking review of a plea inducement claim that needed to be raised consistent with the PCRA. **Hall**, 771 A.2d at 1235. The timeliness of a PCRA petition is a jurisdictional requisite. **Commonwealth v. Ziegler**, 148 A.3d 849, 853 (Pa. Super. 2016). A judgment of sentence, for the PCRA's purposes, becomes final at the conclusion of direct review or at the expiration of time for seeking review. 42 Pa.C.S. § 9543(b)(3). A PCRA petition must be filed within one year of the date the judgment becomed final. 42 Pa.C.S. § 9545(b)(1). The exceptions to the PCRA time-bar allow for very limited circumstances under which the late filing of a petition will be excused; a petitioner asserting an exception must file a petition within one year of the date the time-bar exception claim could have been presented. 42 Pa.C.S. § 9545(b)(1)-(2). Here, the judgment of sentence has long since been final by more than a decade and the instant plea inducement claim was never raised in a timely PCRA petition or a PCRA petition in which Appellant even attempted to plead and offer to prove the

applicability of a PCRA time-bar exception.[8]  In these circumstances, we have no jurisdiction to address Appellant's plea inducement claim based on a contractual misrepresentation theory.  ***See Commonwealth v. Derrickson***, 923 A.2d 466, 468 (Pa. Super. 2007) ("[i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition.  Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'") (citation omitted).

## III.

In his third issue, Appellant addresses the lower court's response to the claim raised in his Rule 1925(b) statement in which he alleged that lower court erred by treating his plea enforcement motion as a PCRA petition.  He concedes that the claim is moot because the lower court agreed in its opinion that the motion was not a PCRA petition.  Appellant's Brief at 20, ***citing*** Lower Court Opinion, 12/14/22, 12.  This claim requires no response, but we use the occasion to note that we agree that the petition at the focus of this appeal was a reviewable petition that intended to enforce the terms of the parties' plea agreement via a claim of specific performance.  While we ultimately do not

---

[8] Appellant's judgment of sentence became final on May 28, 2007, the first weekday after the thirty-day deadline for filing a direct appeal expired where Appellant chose not to file any timely post-sentence motions. ***Commonwealth v. Ring***, 2015 WL 7721930 at *3 (noting that Appellant's judgment of sentence became final in May 2007); 42 Pa.C.S. § 9545(b)(3) ("a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review"); 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted form the computation.").

find that any contract breach occurred necessitating the grant of relief to ensure specific performance, we concur that the lower court properly reviewed Appellant's breach claim without resorting to application of the PCRA.[9]  **See Kerns**, 220 A.3d at 611-12 ("a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual theory of specific performance").

## IV.

In his last issue, Appellant asserts that the lower court erred "by not offering promissory estoppel as a possible remedy to enjoin the [C]ommonwealth from continuing to submit negative recommendations to the parole board."  Appellant's Brief at 20-21.  This claim is waived as the record does not reflect that Appellant made any request seeking to enjoin future parole recommendations by the Commonwealth based on a theory of promissory estoppel in his filings before the lower court.  Appellant's argument only refers to the claim being raised in his Rule 1925(b) statement and our independent review fails to uncover any reference to estoppel in either Appellant's plea enforcement motion or his answer to the Commonwealth's response to his motion.  Appellant is unable to raise an estoppel issue for the first time on appeal and thus this claim is unreviewable for purposes of this

---

[9] As addressed *supra* in section II, we hold otherwise that the plea inducement claim that was raised in the Appellant's answer to the Commonwealth's reply to his plea enforcement motion was cognizable under the PCRA and could not be reviewed where it was not presented in a PCRA petition that raised any arguments for the application of a statutory time-bar exception.

appeal. Pa.R.A.P. 302(a); **see, e.g., Walton v. Philadelphia Nat. Bank**, 545 A.2d 1383, 1385 (Pa. Super. 1988) ("We find no evidence in the record that appellants ever raised a claim of estoppel in the court below. We therefore find this contention waived.").[10]

We affirm the denial of Appellant's plea enforcement motion where there was no term in the plea agreement concerning parole or parole recommendations and thus the Commonwealth did not breach the agreement by making negative parole recommendations. We conclude that Appellant's claim that the Commonwealth unlawfully induced his plea was cognizable under the PCRA and is unreviewable where Appellant included it in a plea enforcement motion, rather than a PCRA petition, and never advanced any arguments for an applicable exception to the PCRA's time-bar in his filings

---

[10] Even assuming *arguendo* that this claim based on promissory estoppel were not waived, it would be meritless because the Commonwealth did not promise to refrain from making any parole recommendations as part of the plea agreement in this case. Where Appellant failed to broach any bargained-for term concerning parole recommendations in his plea negotiation, there would be no basis under estoppel to enjoin the Commonwealth from making any future negative parole recommendations. The lower court properly appreciated this in its Rule 1925(a) opinion:

> [T]he [District Attorney] made no promise with regard to making recommendations to the Parole Board. Because this court finds that the [District Attorney's O]ffice did not break their agreement with [Appellant] – nor make any promise to [Appellant] regarding his eventual parole consideration by the Parole Board – there was no reason to consider promissory estoppel as a remedy.

Lower Court Opinion, 12/14/22, 12.

before the lower court.  Appellant's promissory estoppel claim is waived for our purposes where it is raised for the first time on appeal.

Plea enforcement motion denial affirmed.  Jurisdiction relinquished. Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/01/2023